Thank you, Your Honor. May it please the court, I am Joseph Thacker, attorney for Waste Management, Incorporated and Waste Management Hawaii, Incorporated, the appellants here. There are three flaws with the district court's analysis of waste motion to remand this case to state court. The first is that it is directly contrary to the this court's holding in Gash v. Hartford. In Gash v. Hartford, the court stated very clearly that Texas law clearly provides a right of action against an insurance company adjuster under Section 541.060 of the Texas Insurance Code for any of the nine listed acts in that section of the code. The district court, however, found that no such right of action existed as it related to the very acts complained about in the Gash case, those being the failure to conduct a reasonable investigation before denying the claim and failing to make a prompt and reasonable settlement offer when the insurer's liability became clear. Second, the court made sweeping findings regarding the role of an adjuster generally and limitations on the role of the adjuster generally in order to find no possible liability on the adjuster's part. Uh, that is simply inconsistent with the statutory language. By the way, the court didn't even purport to interpret the actual statutory language. It made these findings notwithstanding the statutory language. Finally, the district court violated the Smallwood framework for analyzing a motion to remand. Under that framework, the court should have accepted the uncontested fact that in this case, this fact is set forth in the original petition, that in this case, the adjuster, the non-diverse party, AIG Claims, Inc., an affiliate of the insurer here, AIG Specialty Insurance Company, was in fact designated to handle this claim, to investigate this claim, to evaluate this claim, and to affirm or deny coverage for the claim. On that basis, the court's other findings, the court simply should have accepted that uncontested fact, and there would have been no need for these sweeping findings made by the court limitations on the role of an adjuster. Further, the court ignored the split in authority that is set forth in the court's own order, establishing at worst from the standpoint of appellants, that there was an ambiguity in Texas law as to whether the adjuster could be held liable under Chapter 541 of the Texas Insurance Code. The court, under the Smallwood analysis, that would dictate remand of the case because of the ambiguity in state law. The court did not do so. Based on these flaws, the denial of the motion to remand, I'm sorry, let me make one other point. Waste did nothing after the denial of this motion to remand to give the court, if you will, jurisdiction as alleged in the AIG response brief, or brief answer brief. For those reasons, we ask that the court reverse the denial of the remand in order that this case be remanded to Texas State Court so that the waste management companies can be held liable under Chapter 541 of the code. As it relates to the substance of this case, the duty to defend, that there is a waste position in its simplest form is that there is only one claim under this insurance policy. And that claim was initiated with the administrative order on into a grand jury investigation that pursuant to federal guidelines, guidance documents, further civil proceedings were postponed until such time as the criminal proceedings ended, and then those criminal proceedings began and were settled. But it was one claim, and that is demonstrated by looking at the statute, excuse me, the enforcement regime that is laid out in the parallel proceeding documents that we put forward with the court. As it relates to this issue, the issue of that all of these proceedings are simply parts of a the district court refused to look at the law, the environmental law that gives rise to these policies. He refused to look at it on this issue, even though one cannot tell from looking at the face of the policy what cleanup costs are. And cleanup costs are what are insured. It's loss resulting from a claim for cleanup costs that is covered by coverage D of the policy. One can't know what the cleanup costs are without looking at environmental laws, because of the definition that AIG chose to use, chose to put in the policy, a definition of laws. Mr. Thacker? Yes. If I may, Judge Jones? Yes. Well, yes. In making the proposition on the merits of the coverage dispute and making the proposition that there's just one claim, and we know that from the parallel proceeding regime, my difficulty with that is it does look to me like in 2011, the EPA AO specifically said, we aren't deciding criminal matters. Then the grand jury indicts in 2014. And the relevant count then is count nine charging 1311. Your client then pleads guilty. And eventually there are other civil matters. I think the beginning civil and the ending civil would have been covered if they exceeded the deductible. The issue is, do you get to recover defending against the 1311 count? If I'm right in all that, here's my question in the from the provision, 1319. 1319 has criminal and civil separated out. When I looked at the indictment and the plea, both of them refer to criminal only penalties, 1319C. If that's correct, isn't that a difficulty for your argument? Your Honor, let me respond first to the notion that there is not a single claim here. The AOC was still pending when the grand jury investigation began in April of 2013. Under this specialty insurance policy, specifically designed to cover waste liabilities and defense costs against environmental claims, specifically designed under for claims under those. I appreciate the time slipping away. My question simply is, did your client plead guilty to only criminal penalties and the guilty plea reserved any and all civil penalties? Is that a correct description? Yes. Yes, it is, Your Honor. Sorry. But now go ahead. You can you know, I don't mean to be suggesting a result that's important for you to know, but you may now distinguish that or you may get other questions that are more relevant. Well, I'm sorry. Go ahead. I thought I heard a question. Does that matter? Does that matter that they pledged to the criminal? No. Analyzing this policy. No, it does not, Your Honor. The only thing that would matter is how the so-called criminal fines, penalties and assessments exclusion would apply. That's a very odd exclusion. It doesn't exclude all criminal proceedings. It doesn't, nothing in the coverage clause for cleanup costs eliminates coverage for anything related to criminal proceedings. That's different from the coverage for property damage or bodily injury, which is expressly limited to civil. But the difficulty I have with that again is the brief keeps citing to specifically the particular page in the record. It cites to for cleanup costs having been incurred. I think I'm correct. It's the JNC and it's the JNC saying you owe about 300,000 restitution. How could that not be a criminal assessment excluded by the policy? Well, Your Honor, the policy exclusion is for claims or loss due to criminal fines, assessments or penalties due to under established Texas case law and in common terms means caused by. Uh, so it excludes claims caused by criminal fines, penalties or assessments. Well, that is a very narrow exclusion. It doesn't relate to, uh, uh, defense costs. It doesn't relate to all criminal proceedings. So that I'm, I'm your specific question of $300,000. Will that be excluded under the exclusion? Is it due to 300,000 due to a claim? Excuse me, is that 300,000, a claim or loss due to a criminal penalty? If it is, it's excluded, but that doesn't eliminate coverage for other things that could have been awarded. And, and, you know, let's step back and let's talk about McGinnis for a moment. The district court refused originally to even look at these environmental laws under Texas law, under Texas law is demonstrated by McGinnis. Texas courts look at legal, the legal framework within which these liabilities arise. These aren't facts that are going to change the case. They're not, uh, uh, or excuse me, that are, that are, we're trying to add to the, uh, to the allegations against the defendant. These are laws giving rise to, uh, the liability that's at stake here. They are incorporated into this policy. How can you judge Higginson's question? And I, um, could I, could I ask a question about if you would have a caterpillar problem? And by that, I mean that your new complaint did not state your claim against the adjuster because you needed to remove it once you were dismissed, once it was, once it was dismissed by the court. So do you have a caterpillar problem or not? We do not, your honor. Caterpillar dealt with a unique situation where the tribe, where, uh, on the motion to remand the non-diverse party actually stayed in the case throughout. And that with, uh, and there was a settlement with that non-diverse party by the plaintiff, the plaintiff and the non-diverse party settled. There was some action. And then as a result of that, the non-diverse party was dismissed. In this case, what happened is the court dismissed the non-diverse party, our action against him against them. Remember, this is an affiliate of the AIG insurance specialty. Uh, our action against him would have to proceed if at all under the rule of international, uh, energy ventures, if at all in state court here, we did. I'm sorry. I mean, isn't the answer to this, and maybe I'm just completely off base, but isn't the answer to this, that the reason a remand for subject matter jurisdiction, uh, is not appealable in the first instance by statute is that you can still appeal it after judgment. And the fact that you amended after the court denied remand, it seems to me doesn't mean that that is a non-appealable decision. Uh, I agree your honor. And if, if the rule were different, it would simply make every adjudication on remand, essentially not appealable because it's either cases either going to settle or it's going to go to judgment on the merits. And if you were to apply counter pillar here, which we don't think you should, uh, you can never win the appeal. Uh, so effectively the court would be amending the, the removal statutes to make both the order of remand non-appealable and the denial of remand, not appealable, non-winnable on appeal. Uh, I see I'm out of time. All right. You do have a chance for rebuttal. We appreciate your keeping to the time limit. Mr. O'Connor. May it please the court. My name is John O'Connor and I'm representing ASIC in this appeal. Uh, I plan to address three issues today. Oh, one, um, the caterpillar problem. Uh, we believe that, uh, waste management has a substantial caterpillar problem because the Supreme court's decision in that case in fifth circuit, uh, decisions applying caterpillar, uh, preclude, uh, disturbing the judgment entered here, even if the district court had erred in its remand decision. Second, um, we, uh, I plan to address, uh, judge Harmon's remand decision and why, uh, the district court was correct in denying remand and then turning to the merits. Finally, uh, third, I intend to explain why there's no coverage under the ASIC policy for criminal defense costs incurred by waste management. We're starting with caterpillar. Uh, the holding of that case is straightforward. Uh, the court held that a district court's error in failing to remand a case improperly removed is not fatal to the ensuing adjudication. If federal jurisdictional requirements are met at the time judgment is entered and the court explained the rationale, which is that to wipe out a, uh, an adjudication post judgment would impose an exorbitant cost on our dual court system, a cost incompatible with fair and unprotracted administration of justice. This case falls squarely within the holding of caterpillar. This case was litigated in federal district court for more than two years before the district court and its summary judgment on the duty to defect. Uh, this court was pending nearly three years in a district court before the district court and its summary judgment on the remaining counts. There was complete diversity of citizenship between all parties remaining in the case at the time of district court issued both of those summary judgment ruling. Oh, I'm sorry. In fact, AIG claims the allegedly non-diverse party is so far removed from this case that waste argues that they were dismissed by the district court, but doesn't appeal a dismissal of AIG claims. Uh, the relief requested in waste brief is a remand, but does not ask to reinstate AIG claims. And I think most importantly, AIG claims is not even a party to this appeal, uh, is not represented in this appeal at all. And waste is asking the court essentially to reinstate a long dismissed party and then remain the case of state court after a a complete diversity of citizenship between the parties. And I want to raise the court's decision in kid versus Southwest airlines, because I think it makes an important point. It goes in some ways towards judge Jones's question in kid versus Southwest airlines. The court pointed out another reason why the rule decision that waste promotes here cannot be the law. In our case, the district court entered summary judgment for my client, the defendant and waste position is, well, I amended the complaint and my amended complaint only asserts counts against a completely diverse party, but I should still be able to challenge jurisdiction. Well, let's change the facts. What if judge Hainan had granted summary judgment to waste, uh, the opinion in this court held, you know, recognize the inequity that a waste proposed rule would have because at that point, when a case went up on appeal and the question were asked, was there subject matter jurisdiction here? Waste would say your honor, we amended our complaint and our medical complaint asserts claims only against a completely diverse party. And it's well established that a plaintiff can cure a jurisdictional defect by amending its complaint to eliminate a non-diverse party. So the rule that waste is proposing here would create a heads. I win tails. You lose approach to jurisdiction. That would be entirely dependent on who wins the merits that if waste had won on the merits, there would be jurisdiction because it can amend its complaint to cure jurisdictional defect. If waste loses on the merits, waste rule is there's not jurisdiction. If the district court had erred in deciding the remand issue, um, turning to the correctness of judge Harmon's remand decision, waste brief mischaracterizes what the district court held. Uh, in its brief waste said under the district court's view, an adjuster can never be held liable for violations of five 41.0 60. Actually the district court held precise to the opposite. The problem here is that the allegations in the state court went solely to the fact that ASIC refused to pay the claim included. There was no coverage and refused to pay the claim. Under those circumstances, that is a relationship is a contractual one between waste and the insurance company with which it has a contract. That's a non-delegable obligation of an insurance company. And in fact, waste, uh, sort of makes our point when, uh, having admitted in the district court that the extra contractual accounts go away. If there's no coverage, the extra contractual accounts are entirely dependent on there being coverage, which is again, a contractual matter between, uh, ASIC and waste. Um, finally, the merits, uh, waste committed criminal offenses, uh, spent a million dollars defending against the criminal charges brought against it. And the question presented here is, can waste ship the cost of defending those criminal charges to its insurer? And the policy doesn't allow that. Uh, the policy that ASIC issued importantly, and I think judge Higginson mentioned this, uh, has a $5 million per event self-insured retention. Accordingly, um, ASIC has no obligations at all until waste has incurred covered expenses on a loss that exceeds $5 million. Um, judge Hainan correctly found that there was no duty to defend here because, uh, the proceedings against waste did not qualify as a claim seeking loss. Now I'll walk the court through the policy of the policy provisions on which we rely are at tab one of our record excerpt, but I will also, uh, say the record page as I go. Uh, the defense provision in waste policy provides that ASIC has a duty to defend only quote, when a claim is made against the insured to which an insuring agreement applies. That's the record at three 27. And when there's a duty to defend importantly, that duty extends only to defending quote such claim. And that's important because when we look at, uh, waste attempt to leverage the AOC into defending a criminal charge, the policy provides that when there's a duty to defend, you only have to defend the claim that seeking a covered remedy, not something else that might be related. And under Texas law, the way a duty to defend is determined is by the familiar eight corners rule. You take a claim and you take the policy and you compare them and ask, is there a demand for a remedy in this claim? It will be covered by this policy. Um, and in fact, in Gilbane, this court was very clear in giving guidance to district judges on how to apply Texas's eight corners rule and instructed that courts should not invent or imply a demand that was not there. Um, even if a claim, even if some claim would more closely track the true factual circumstances, if that claim is not made, it should not be implied by a district court. So in the district court and here, we've always asked the same question. Where's the claim? Uh, it can't be the AOC because the AOC was all the cleanup demanded by the AOC was done by August of 2011, which was before, uh, waste even gave notice to ASIC. But even more importantly, uh, waste acknowledged and conceived in the district court that it has no claim for the cleanup costs that it incurred in complying with the AOC because those were completed well within the $5 million per event self-insured retention. So the AOC is not available as a claim that ASIC would have to pay. So let's turn to what was in existence at the time ASIC was put on notice. That's the group. All that was going on was a grand jury investigation. Again, on the VA corners rule, there's no claim here. There's no grand jury demand that waste do anything that would be covered by the policy. They're just investigating. Two and a half years later in 2014, uh, waste was finally indicted. But again, as the district court correctly held, the indictment is not a claim. The indictment does not demand any particular relief at all. And under Gilbane, the court should not, should not imply a demand for relief that was not there. And if there had been a demand for relief in the criminal indictment, that would be subject to the exclusion in the policy for costs due to criminal fines, criminal penalties, and criminal assessments. So under any circumstance, the criminal charges in the potential sentence that waste face was not something that was covered your ASIC policy. If the court has any questions, I'm prepared to okay. Can you hear me? All right. I can hear you fine judge. It's, um, in a straight claim for cleanup costs are the, uh, insurance attorney's fees included there. Okay. I want to make sure I understand the court's question. If, if there had been a demand for cleanup costs, so for instance, the AOC, it demanded if, if waste had incurred fence costs in negotiating and implementing the cleanup required by the AOC, would that be covered by the policy? The answer to that is yes. If those costs came exceeded the $5 million per event SIR here, however, uh, it's conceded that they did not. And in fact, the, what we really, on the front end, you have the AOC, which was the cost for that were pretty de minimis on the back end. There was a civil claim. Okay. So theoretically, um, but an indictment under some circumstances give rise to a claim for defense costs. Your honor, I can't speak to every indictment, every form it could take, uh, an indictment typically does not seek a remedy seeks a conviction. And so absent a demand for remedies for the eight corners rule to apply where you would look at the claim. I think the answer would be no. Um, and I think if there were in a criminal indictment, a demand for specific remedy, that's very likely something that would be excluded, at least out of the basic policy. But, um, I mean, that's judge Jones's questions. There's really my curiosity too, because when I think of an indictment and whether or not there's a remedy, I do turn to the penalty section of the offensive conviction that tells us what available remedies there are, which is the questions that I was asking opposing counsel. Um, and yet when I then look at the judgment and conviction, there is an entry of a $300,000 pay for cleanup. So if you look at the ultimate judgment and conviction, which would seem to be the claim, and you also look at the pre plea letter sent from the department of justice to waste management, it also seems to say the 1311 count is over your head and could contemplate cleanup costs. Why not just pay that? And then they do plea. So why isn't that sort of the scenario we were just discussing with judge Jones that this criminal case did always contemplate restitution. Oh, restitution, your honor. When, uh, when ordered in a criminal case or the law of the circuit is a criminal penalty. And in fact, the restitution awarded in this case was awarded as a criminal penalty. The letter, sorry. Yes. But, but the trouble is the district court was very clear. He didn't reach the exclusion. So if you have a cleanup loss as a result of the criminal case and judge Jones's questions to you, I think were, wouldn't attorneys fees be included? Isn't that the argument your honor. However, where it falters is Bill Bain does not allow to imagine or imply what relief the claimant might seek against a particular defendant. And you're right. Your honor, the district court did not address the exclusion, which I think would fairly clearly apply here. Um, and that is an alternative grounds for affirmance that we raised in our brief, because there is a, if you could even get through Gilbane and assert a claim, then you've got a real problem that it, that claim is excluded by the, by the explicit terms of the policy. And, and the defense costs are being excluded because defense costs look at what, whether there's a liability that would be subject to the duty to indemnify. And here the criminal crimes penalties and assessments are not indemnifiable. And so therefore there's no obligation under the defense provision to defend against a claim that was actually explicitly seeking those sorts of damages, which of course is not the case here because no relief at all was sought in the indictment. Um, I can always come up with questions. Um, the gas, go ahead, please. I'm sorry. I didn't know you had one. Um, do you proceed or do you want to ask again? No, please. I'm going to ask the question. Um, I wanted to find out, I don't understand your interpretation of Gilbane. It seems like Gilbane doesn't stand. It's kind of scorched earth approach that you can't, if you're thinking of anything, then that's outside of Gilbane. I think we're very familiar with Gilbane on this panel. And, um, I don't understand that interpretation of Gilbane. Can you please elaborate on why you think specifically Gilbane as far as this? I know the district court wrote on this too. Yes, your honor. And obviously, uh, your honor is in a far better position to judge the intention of Gilbane than I am. Um, the, the lesson of Gilbane as I see it, it is not really a unique statement of Texas law. Um, it's that you should not imply a demand for relief that could have been brought, but was not brought. That's how I read Gilbane. And there's a lot of cases cited in our brief Clemens, other cases that say the same thing. And so our point with Gilbane is that it's not appropriate when conducting the eight corners test to hold up the claim and look at it and say, yes, they did not seek in this claim, a remedy that will be covered by the policy, but boy, you know, they could have, um, the, as I read Gilbane, the lesson there is not an appropriate vote of analysis, whether they could have what the duty to defend rises on what was actually sought and not what could have been sought, but it was not sought by a cop. But you're not yet look at the government documents or are you saying that? Well, your honor, um, I think the eight corners rule strictly circumscribed what should be looked at, but I don't think that the government documents change anything. The government documents of judge Hingeson said during Mr. Thacker's presentation, they talk about the criminal proceedings and the need to keep them separate. So nobody's stepping on anybody else's toes. And in fact, that concept embodied in the language of a six policy, because where there is a claim that seeks a remedy that will be covered by the policy, the duty to defend only extends to defending such claim, not anything on a related constellation of facts or anything like that. You defend the demand for something that would be covered and that's all you defend. Um, I don't see that the government documents that waste has submitted to the district court and to this court change anything, even if they are properly considerable in assessing whether there was a claim. Okay. Thank you. Um, unless the court has additional questions, our view is that there is a caterpillar problem here. Um, you have caterpillar and kid point out that, uh, when a party is amended its complaint in a way that would create complete, uh, diversity of citizenship would create federal jurisdiction that challenging a prior remand denial is not an appealable issue. Um, can you distinguish cam soft? Um, your honor cam soft, as I recall, it was trying to, Oh, in cam soft, I believe the, I believe the diverse part, the non-diverse party was in the case all the way to the end. No, no, I don't think that's accurate. They amended their complaint in cam soft after they had been denied the rematch. Oh, your honor's sitting here today. I can't, I can't remember the enough to give an answer. If the court has no further questions, that's all I have. Thank you. All right. Thank you, Mr. Thacker. Yes, your honor. Thank you. Um, I, I, I must confess. I'm, AIG claims into the case, uh, or, um, that they're not represented here on the appeal. They are a non-diverse party. Uh, they can't be in the, according to the district court, they can't be in this case. If they were to be where they would properly be is in the Texas state court where we're asking the court to send this back to in that way, we can have claims against both defendants. Um, AIG or in, in, uh, in, in the argument, uh, AIG, uh, as counsel, Mr. O'Connor, um, stated that when you look at, at the claims in the original petition against AIG claims, Inc, uh, it's all about failure to pay. That's just inaccurate. Um, and by the way, one of the things that the district court did not do, uh, is a, uh, what was it? Uh, an Iqbal to me, uh, uh, analysis, but I'd like to give the court. We very clearly pled a claim for failing to admit or deny the coverage, uh, within a reasonable time. In fact, it was 13 months after we gave all of the information requested by AIG claims before AIG claims bothered to get around to admitting, denying, or reserving rights. I'd like to, that is in the original petition. If the courts, if the court would look at, uh, paragraph five paragraphs, six, I'm sorry. It's a record, uh, on appeal, uh, 32, uh, 42 to 43, 45 and 48. It lays out the claim that it was a 13 month delay that we suffered damage as a result of that and states the type of damage, um, uh, and, um, that we had provided all of the information that had been requested. There are other claims in there, but only one needs to survive. That one is the one I offer in the limited time we have. Um, Mr. O'Connor asked, where is the claim? The claim is again, in, in our view, the claim is embodied in these parallel proceedings. It was initiated and continued nonstop. The, the, the same claimant, the United States of America, it's based on the same, uh, facts, the January, uh, 2011 storm. It's based on the same damage, the contaminated water flowing down to the beach and into the ocean. And as the investigation went on, the government came up with additional damage that it claimed to the coral reef, to sea life, to aquatic plant life. That claim continued from January of 2011 until it was resolved at the civil stage in 2016. And how do we know that? We know that from looking at the directives of the DOJ and the EPA that required them to coordinate their investigations. And just to be clear, AIG isn't disputing. They would have a duty to defend the EPA AO stage. And then the ultimate 2716, you just mentioned, they're agreeing to that. If you see the deductible that's, that's absolutely correct. Your honor. And, and the, the, the middle piece of course, where all of the money and it is part of the, that middle piece is part of the investigation and part, I'm sorry. But the logic there is it's part of, because if the government wants to, they can do global parallel proceeding, but the factual difficulties, it looks like in all the actual record documents here, the government kept saying the opposite civil doesn't compromise criminal criminal doesn't compromise subsequent civil. So, and then when I look at the ultimate finished with the question, sorry, the, the, the plea agreement itself, usually in a global plea agreement, it's got civil and criminal government attorneys here. It was all criminal attorney signing it, right? Well, that, that is true, your honor. But remember for the duty to defend it's the potential. It's not actually done. And the mere fact that potentially it could have come out on the global side, it indicates that there, there, this was covered and my time is out. Thank you very much. You're not quite off the hook. What is your case for saying that a policy of this sort covers criminal defense costs? Your honor, this is a specialty policy. There is very little case law on it. May I give you an answer other than best case? Can I put you to the policy itself? No, we've, we've, we've heard a lot about the policy. I'm, I'm looking for, I was just very, very surprised. Okay. What's your best case for saying, but not withstanding an ex a specific exclusion for covering criminal matters that you can still obtain your criminal defense costs? Because the, uh, the, uh, best case I have, and I'm sorry, but it's, it is a case that we cite in, in our, uh, the position, uh, in our, uh, reply brief about the criminal exclusions. It's basically the notion that when you are interpreting an exclusion, it must be clear and unambiguous under Texas law, and it must be literally construed. So, and there's actually Texas case law that says, um, that there's an especially strict construction we have in the record. And I hope that I could find it, but we have in the record, uh, it was an exhibit that was stipulated to by AIG, a different AIG specialty criminal exclusion that expressly excludes anything involving allegations of criminal conduct. They could have used that here. They use this very odd exclusion claims or loss due to criminal fines, penalties, or assessments. I don't want to, I I'll keep talking. If you guys if your honors will let me, thank you very much, your honor. I have a one sentence answer to judge Alrod's question on cam soft. If I could indulge the court one sentence, one sentence, your honor judge Alrod cam soft went out on a 12 B six motion. And this court was held that the rule of Caterpillar applies to decisions on the merits, which it has defined as summary judgment or a trial, not a 12 B six motion. Do you have a one tenant response? Uh, yes, your honor. Uh, the 12 B six is typically considered a ruling on the merits and, uh, the, the, the, uh, okay. All right. Thank you, gentlemen. John, thank you. What's in recess. Thank you.